# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

ADELA I.,

        Plaintiff,

     v.

KILOLO KIJAKAZI,
  ACTING COMMISSIONER OF
  SOCIAL SECURITY,[1]

       Defendant.

No. 19 CV 3590

Magistrate Judge McShain

## MEMORANDUM OPINION AND ORDER

Plaintiff Adela I. brings this action under 42 U.S.C. § 405(g) for judicial review of the Social Security Administration's (SSA) decision denying her application for benefits. For the following reasons, the Court grants plaintiff's motion for summary judgment [13],[2] denies the Acting Commissioner of Social Security's (Acting Commissioner) motion for summary judgment [19], reverses the SSA's decision, and remands this case for further administrative proceedings.

## Procedural Background

In January 2016, plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging an onset date of April 10, 2013. [9-1] 185-

---

[1] In accordance with Fed. R. Civ. P. 25(d), Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as the defendant in this case in place of the former Commissioner of Social Security, Andrew Saul.

[2] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, with the exception of citations to the administrative record [9-1], which refer to the page numbers in the bottom right corner of each page.

88. Plaintiff's claim was denied initially and on reconsideration. [*Id.*] 107-11, 117-20. Plaintiff requested a hearing, which was held by an administrative law judge (ALJ) on February 7, 2018. [*Id.*] 33. In a decision dated April 25, 2018, the ALJ ruled that plaintiff was not disabled. [*Id.*] 15-28. The Appeals Council denied review on March 27, 2019 [*id.*] 1-5, making the ALJ's decision the agency's final decision. *See* 20 C.F.R. §§ 404.955, 404.981. Plaintiff timely appealed to this Court [1], and the Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g).

## Factual Background

Plaintiff, who was thirty-nine years old at the time of the alleged onset date, *see* [9-1] 85, sought disability benefits based on degenerative joint disease in both knees, right foot drop, obesity, and complications stemming from Charcot Marie Tooth (CMT) disease, an inherited and progressive form of peripheral neuropathy that can cause loss of sensation and fine motor control in the upper and lower extremities. [14] 1 n.1. The ALJ found that plaintiff should be limited to sedentary work because of the impairment in her right knee, but the ALJ concluded that plaintiff had no work-related limitations in her ability to finger and manipulate. The focus of plaintiff's appeal to this Court is that latter ruling.

### A. Medical Records

On April 24, 2013, plaintiff underwent electromyography (EMG) testing with Dr. Ligia Rioja, her neurologist since 2009, *see* [9-1] 311, in connection with her right foot drop and CMT disease. [*Id.*] 302. When plaintiff presented for the testing, she reported "decreased strength in her hands, grasping items." [*Id.*]. On physical

examination, Dr. Rioja observed atrophy in the intrinsic hand muscles and rated plaintiff's bilateral FDI (*i.e.*, first dorsal interosseous muscle) at 4/5 and her bilateral APB (*i.e.*, abductor pollicis brevis muscle) as 3/5 and 4/5. [*Id.*]. Plaintiff's right upper extremity had active denervation and decreased recruitment in the distal muscles. [*Id.*] 312. Compared with plaintiff's 2009 EMG–"which at that time showed abnormalities in multiple extremities suggestive of Charcot Marie Tooth disease"– the 2013 EMG demonstrated "progression of the disease, with significant axonal injury not only in the right lower extremity but also in the . . . right upper extremity." [*Id.*].

Plaintiff saw Dr. Rioja again on May 29, 2013. [9-1] 358. Dr. Rioja rated plaintiff's strength in her right APB at 3/5 and her left APB at 4/5; plaintiff's right and left FDIM strength were both 4/5. [*Id.*]. Plaintiff also had normal bilateral pin and vibratory sensation. [*Id.*]. Dr. Rioja again observed that plaintiff's EMG "shows progression of the neuropathy," which was "also evident in the right upper extremity." [*Id.*] 359.

Dr. Rioja next examined plaintiff on August 2, 2013. [9-1] 355. The strength and sensation findings were identical to those of plaintiff's examination in May. [*Id.*] 355-56.

Plaintiff returned to Dr. Rioja for an examination on February 28, 2014. [9-1] 352. Dr. Rioja recorded the same strength findings as on the May and August 2013 exams, but also observed that plaintiff's pinprick sensation was "normal bilaterally

decreased in distal extremities." [*Id.*]. In the assessment section of her report, Dr. Rioja noted that:

> [Plaintiff] is here to discuss the rejection of her long-term disability. She brought the letter today and the medical review states that she has neuropathy only in her lower extremities and she should be able to do sedentary work. However on today's examination and on my previous EMG there is weakness in the distal hands and most likely her neuropathy involves her hands. Because of this she may not be able to do fine motor movement of her hands . . . She will get an EMG of the upper extremities.

[*Id.*] 353.

After this examination, Dr. Rioja wrote a letter dated February 28, 2014 that was addressed "To Whom It May Concern" and included the subject line "Re: Long Term Disability." [9-1] 311. In the letter, Dr. Rioja stated that, while CMT disease "is typically known to affect the lower extremities, based on testing done one year ago (EMG), [plaintiff] also has weakness in her hands. Because of this she is not only unable to stand or walk for significant distances or amount of time but she has also lost fine motor control of her hands." [*Id.*].

Plaintiff had an upper-extremity EMG on March 5, 2014. [9-1] 314. According to Dr. Susan Sicotte, who performed the testing, plaintiff reported problems with clumsiness, cramping, and tingling in both hands, though "[t]he right hand is worse than the left." [*Id.*]. On examination, Dr. Sicotte found that plaintiff had "thenar atrophy on the right," her grip and intrinsic strength were reduced bilaterally but worse on the right, and her sensation had decreased in an ascending pattern. [*Id.*]. According to Dr. Sicotte, the EMG test results showed prolonged distal latencies in plaintiff's right median motor nerve and right median antidromic sensory response

as well as "active denervation in the right distal hand muscles." [*Id.*]. Sicotte opined that "these electrodiagnostic findings reveal the presence of a mixed sensorimotor polyneuropathy which is predominantly demyelinative in nature." [*Id.*]. In addition, there was "greater involvement of distal nerves and muscles and especially a preference for the right median nerve where there is significant muscle loss and denervation." [*Id.*]. "When compared to the previous EMG of 4/24/13," Dr. Sicotte concluded, "there is evidence of progression." [*Id.*].

In August 2016, plaintiff was evaluated by Dr. Amir El Shami for possible carpal tunnel syndrome. [9-1] 551-55. Plaintiff presented with pain in her right fingers that radiated up her forearm and arm, weakness in her right hand, and reports of dropping objects. [*Id.*] 555. Plaintiff also reported similar problems, though to a lesser degree, with her left hand. [*Id.*]. An EMG taken during this examination was "abnormal for prolonged latency and decreased amplitude" in all muscle units except the deltoid, and "[m]ild grade fibrilations" were seen in plaintiff's FDI. [*Id.*] 553-54. Dr. El Shami noted that, while the test results were consistent with plaintiff's diagnosis of CMT disease, it was not possible to determine whether plaintiff also had carpal tunnel syndrome. [*Id.*] 555.

Plaintiff was seen by Dr. Robert Parker, at the University of Illinois Hospital and Health Sciences System, on August 24, 2016. [9-1] 468-72. On physical examination, Dr. Parker noted that plaintiff "has lost her grip strength in both hands but much worse on the R with hypothenar muscle atrophy." [*Id.*] 471. Based on his

review of plaintiff's most recent EMG, Dr. Parker confirmed the presence of bilateral carpal tunnel syndrome. [*Id.*] 468, 469.

Finally, plaintiff was seen by orthopedist Alfonso Mejia on May 4, 2017 for her complaints of bilateral upper arm and hand numbness. [9-1] 501-03. Plaintiff reported sporadic numbness and tingling in both upper extremities as well as difficulties opening jars. [*Id.*] 501. On physical examination, Dr. Mejia found that plaintiff has "5/5 strength in all major muscle groups" and "5/5 grip strength bilaterally." [*Id.*] 502. Dr. Mejia prescribed "conservative management" that included night splints, vitamins, and "home nerve gliding exercises." [*Id.*].

### B. State Agency Examinations and Reviews

Plaintiff was seen by Dr. Dilip Patel, the state agency consultative examiner, on February 16, 2016. [9-1] 397-400. Plaintiff's chief complaints were bilateral knee pain and right foot drop [*id.*] 397, but Dr. Patel also measured plaintiff's dexterity. Patel found that plaintiff was able to write, button and unbutton, zip and unzip, tie and untie, dress and undress, turn a doorknob, open a jar, and shake hands. [*Id.*] 399. Plaintiff's ability to perform the following activities with both hands was found to be normal: picking up a coin, squeezing the bulb of a blood pressure cuff, picking up and holding a cup, and picking up a pen. [*Id.*]. Plaintiff's "pinch strength assessment" was normal for both hands, and Dr. Patel found that plaintiff's hand grip was likewise normal in both hands. [*Id.*].

Plaintiff returned for a second consultative examination by Dr. Patel on July 1, 2016. [9-1] 410-15. At this examination, Dr. Patel noted that plaintiff's medical

history included a diagnosis of CMT disease "leading to intermittent hand stiffness." [*Id.*] 410. The dexterity, pinch-strength, and hand-grip findings at this evaluation were identical to those on the February 2016 examination. [*Id.*] 412.

In February 2016, state agency medical consultant Dr. Bharati Jhaveri reviewed plaintiff's medical records and prepared a residual functional capacity determination. [9-1] 85-93. In the "Findings of Fact and Analysis of Evidence" section of his report, Dr. Jhaveri wrote that he reviewed two records relevant to plaintiff's CMT and hand issues: Dr. Rioja's letter of February 28, 2014 and the report of Dr. Patel's February 16, 2016 exam. [*Id.*] 88. Based on this review, Dr. Jhaveri opined that plaintiff was not disabled and had no manipulative limitations. [*Id.*] 91.

In July 2016, state agency medical consultant Dr. Reynaldo Gotanco conducted a second review of plaintiff's medical records. [9-1] 95-105. Dr. Gotanco reviewed the same records as Dr. Jhaveri had reviewed, but he also reviewed the results of Dr. Patel's July 2016 consultative exam and acknowledged that plaintiff was now "report[ing] more severe and frequent weakness and pain in knees and hands." [*Id.*] 99. Like Dr. Jhaveri, Dr. Gotanco concluded that plaintiff had no manipulative limitations. [*Id.*] 102, 105.

C.    **Plaintiff's Testimony**

At the hearing before the ALJ, plaintiff testified that she experiences numbness and tingling in her hands, and that these sensations travel up her arms. [9-1] 64. She testified that her difficulties with her hands causes her to drop things like jugs of milk and glasses when she does the dishes. [9-1] 48-49. She had dropped

something two days before the hearing, and she estimated she drops and breaks a cup every two or three weeks. [*Id*.]. Plaintiff and her family used paper plates and plastic silverware because plaintiff "can't seem to have good grasp on things[,]" and plaintiff took other "steps to limit what [she is] actually grasping." [*Id*.] 65-66. Plaintiff said that her right hand was worse than her left, and that her doctors had not advised her about a long-term solution. [*Id*.] 50-51. Plaintiff testified that she is able to drive, prepare meals, do laundry, and iron clothes, [*Id*.] 52-54, 59.

### D. The ALJ's Decision

Relying on the standard, five-step analysis for deciding disability claims, the ALJ issued an unfavorable decision denying plaintiff's claim. [9-1] 15-28.

At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since her alleged onset date of April 10, 2013. [9-1] 17. At step two, the ALJ determined that plaintiff had the following severe impairments: degenerative joint disease of the right knee, status post-surgery on the right knee; right foot drop; degenerative joint disease of the left knee; and obesity. [*Id*.] 17-18. At step three, the ALJ ruled that plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App'x 1. [*Id*.] 18-19.

The ALJ then determined that plaintiff had the residual functional capacity (RFC) to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), except that plaintiff could never climb ladders, ropes, or scaffolds; could only occasionally balance, crouch, kneel, crawl, and climb ramps or stairs; and must avoid concentrated

exposure to extreme cold and heat, wetness, vibration, dangerous machinery, and unprotected heights. [*Id.*] 19. Rejecting plaintiff's contention that the RFC determination should include manipulative limitations, the ALJ ruled that the medical record showed only "normal findings or mild abnormalities" and "grossly intact manipulative abilities." [*Id.*] 25; *see also* [*id.*] 21 (plaintiff "only had mild weakness" in upper extremities "which contradicts greater limitations").

Based on this RFC, the ALJ concluded at step four that plaintiff was capable of performing her past relevant work as a customer sales representative. [*Id.*] 26. Although that ruling meant that plaintiff was not disabled, *see* 20 C.F.R. § 404.1520(f), the ALJ proceeded to step five and found that there were unskilled jobs within the sedentary range of work that existed in significant numbers in the national economy that plaintiff could perform: document preparer, charge account clerk, and ticket counter. [*Id.*] 26-27. In so ruling, the ALJ determined that plaintiff could perform these jobs "even if [she] were limited to frequent handling and fingering." [*Id.*] 21.

The ALJ accordingly found that plaintiff was not disabled. [9-1] 28.

## Legal Standard

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

9

To determine whether a claimant is disabled, the ALJ conducts a five-step inquiry: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the claimant's impairment meets or equals any listed impairment; (4) whether the claimant can perform her past relevant work; and (5) whether the claimant is unable to perform any other available work in light of her age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

The Court reviews the ALJ's decision deferentially to determine if it is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019)). At the same time, the standard "is not entirely uncritical. Where the Commissioner's decision lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Brett D. v. Saul*, No. 19 C 8352, 2021 WL 2660753, at *1 (N.D. Ill. June 29, 2021) (internal quotation marks and citation omitted). Likewise, "[t]he ALJ's mischaracterization of the medical evidence" may "require[ ] remand." *Lawson v. Saul*, No. 18 CV 4180, 2020 WL 2836775, at *4 (N.D. Ill. Jun. 1, 2020).

## Discussion

Plaintiff seeks reversal of the ALJ's decision on two grounds.

First, plaintiff argues that substantial evidence does not support the ALJ's ruling that she does not have work-related manipulative limitations. [14] 5-9. According to plaintiff, the ALJ either mischaracterized relevant evidence or minimized findings in the medical records that contradicted his ruling that plaintiff had only mild abnormalities in her ability to finger and manipulate. [*Id.*] 6-7. Second, plaintiff argues that the ALJ's alternative ruling–that she would be capable of working even if her RFC determination included a limitation to frequent handling and fingering–lacks a substantial basis in the evidence. [9-1] 9-11. Plaintiff argues that the evidence presented to the ALJ demonstrates that, at best, plaintiff is capable of only occasional handling and fingering, which would preclude her from performing her past relevant work and all unskilled sedentary work. [*Id.*] 11-12.

The Court agrees with plaintiff that the ALJ's decision must be reversed. Here the ALJ failed to discuss important opinion evidence from two of plaintiff's doctors that expressed significant limitations in her ability to use her hands. Furthermore, the ALJ minimized a number of findings in plaintiff's medical records that were inconsistent with his ruling that plaintiff had no manipulative limitations. Finally, the ALJ's decision cannot be affirmed on the alternative ground that plaintiff would not be disabled even if she were limited to frequent handling and fingering because the ALJ did not provide substantial evidence for concluding that a limitation to

11

frequent, as opposed to occasional, handling and fingering accurately reflected plaintiff's abilities.

### A. The ALJ Failed To Discuss Evidence That Was Inconsistent With His Finding That Plaintiff Had No Manipulative Limitations.

"Although the ALJ need not discuss every piece of evidence in the record, he must confront the evidence that does not support his conclusion and explain why it was rejected." *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (internal quotation marks and brackets omitted). An ALJ may not "highlight[ ] facts that support a finding of non-disability while ignoring evidence to the contrary." *Martin v. Saul*, 950 F.3d 369, 375 (7th Cir. 2020).

In this case, plaintiff's doctors opined that plaintiff had lost fine motor control of her hands as well as her grip strength in both hands, but the ALJ did not discuss these opinions or explain how they were consistent with his conclusion that "the examinations" of plaintiff's upper extremities "usually show[ed] normal findings or mild abnormalities." [9-1] 25.

To begin, Dr. Rioja opined in a February 28, 2014 letter that EMG testing had established that plaintiff's CMT disease caused "weakness in her hands" and that plaintiff has "lost fine motor control of her hands." [9-1] 311. Dr. Rioja was plaintiff's neurologist since 2009, and she examined plaintiff multiple times in 2013 and 2014 in connection with her CMT disease. Moreover, Dr. Parker opined in August 2016 that plaintiff "has lost her grip strength in both hands but much worse on the R with hypothenar muscle atrophy." [*Id.*] 471. Dr. Parker examined plaintiff at least twice in 2016 in connection with her carpal tunnel syndrome and hand pain. [*Id.*] 468, 474.

On their face, these two opinions are plainly inconsistent with the ALJ's bottom-line conclusion that, because plaintiff's "medical records often show normal findings in the upper extremities," plaintiff did not have work-related manipulative limitations. [9-1] 21. It is not readily apparent, in other words, how a claimant who has lost fine motor control of her hands, and who has also "lost her grip strength in her hands," nevertheless retains a full range of manipulative and handling abilities. And because these opinions are qualitatively different–reflecting more severe limitations in plaintiff's abilities–than the majority of the medical evidence that the ALJ did discuss, the Court cannot find that that discussion–with no mention whatsoever of Dr. Rioja's or Dr. Parker's opinions–provides a substantial evidentiary basis for rejecting plaintiff's claim. *Cf. Jones v. Astrue*, 623 F.3d 1155, 1162 (7th Cir. 2010) (ALJ's failure to discuss MRI describing additional degenerative changes in plaintiff's spine was not reversible error where plaintiff's treating physicians consistently described plaintiff's condition as mild or benign).

The Acting Commissioner's arguments to the contrary lack merit.

The Acting Commissioner first contends that the ALJ "arguably did weigh Dr. Rioja's opinion" because the ALJ "cit[ed] to its precise page in the record" and "in general" explained "why he did not include manipulative limitations in the RFC." [20] 12. The Court recognizes that the ALJ included a citation to Dr. Rioja's February 28 letter, *see* [9-1] 21 ("see also Ex. IF/14"), but the mere fact that the letter was cited does not mean that the ALJ considered the letter–let alone provided a reasoned explanation of how that opinion factored into the RFC determination. Furthermore,

as even the Acting Commissioner recognizes–given that she characterizes Dr. Rioja's opinion as "extreme," [*id.*] 13–Dr. Rioja's opinion is qualitatively different from much of the other medical evidence in the record (but also consistent with Dr. Parker's August 2016 opinion). It is therefore unreasonable to assume that the ALJ could have factored Dr. Rioja's opinion into his RFC determination without any explanation whatsoever.

The Acting Commissioner next suggests that the ALJ could have assigned little weight to Dr. Rioja's opinion because she "offered essentially no support for [her] extreme opinion." [20] 13. The Court rejects this argument as an impermissible post-hoc rationalization. Because the ALJ himself did not reject or discredit the opinion on the ground that it was unsupported, the Acting Commissioner may not rely on that ground in seeking to affirm the ALJ's decision. *See Lothridge v. Saul*, 984 F.3d 1227, 1234-35 (7th Cir. 2021).

Finally, the Commissioner argues that any mishandling of Dr. Rioja's opinion was harmless. [20] 12-13. In Social Security cases, an error is harmless "when it is predictable with great confidence that the agency will reinstate its decision on remand because the decision is overwhelmingly supported by the record though the agency's original opinion failed to marshal that support[.]" *Annette S. v. Saul*, No. 19 C 6518, 2021 WL 1946342, at *17 (N.D. Ill. May. 17, 2021). The Court does not have "great confidence" that the agency would reinstate its denial of benefits on remand. Taken at face value, the opinions of Dr. Rioja and Dr. Parker support at least some– and perhaps significant–restrictions on plaintiff's manipulative abilities, yet the ALJ

did not address them at all. Moreover, as is discussed immediately below, the ALJ also downplayed the significance of other evidence in the record that was consistent with plaintiff's claim that her RFC determination should have included work-related manipulative limitations. Had the ALJ fully and fairly considered all of the evidence in the record, the ALJ might have found that plaintiff had a RFC that precluded substantial gainful employment. The Court therefore rejects the Acting Commissioner's harmless-error argument.

**B.    The ALJ Minimized The Significance Of Evidence That Was Inconsistent With His Ruling That Plaintiff Had No Manipulative Limitations.**

The Court also agrees with plaintiff that the ALJ mischaracterized parts of the medical record and minimized the significance of evidence that was inconsistent with his ruling that plaintiff was not disabled.

A clear example of this was the ALJ's discussion of the March 2014 EMG testing conducted by Dr. Sicotte. According to the ALJ, this testing "showed similar findings compared to the above-discussed April 2013 study with some progression" of plaintiff's CMT disease, but "include[d] no specificity regarding the severity of findings." [9-1] 22. The ALJ's gloss on Dr. Sicotte's treatment notes appears to overlook Sicotte's findings that there was "*significant* muscle loss and denervation" in plaintiff's right median nerve–which had not been documented on plaintiff's April 2013 EMG. [*Id.*] 314 (emphasis added). While Dr. Sicotte did not mathematically quantify the severity of her findings, her use of the word "significant" to describe the extent of the muscle loss and denervation–especially when considered with her

15

opinion that plaintiff's CMT had progressed since April 2013, *see* [*id.*]–appears to constitute reasonably specific evidence of the severity of the deficits in plaintiff's right hand.

Another example is the ALJ's discussion of Dr. Rioja's treatment note for plaintiff's February 28, 2014 exam. According to the ALJ, this record showed "no significant changes" compared to the 2013 visits and established that plaintiff had only "mild weakness in the hands." [9-1] 22. But the ALJ did not discuss Dr. Rioja's further conclusion that, because plaintiff's CMT disease caused "weakness in her hands," plaintiff "may not be able to do fine motor movement of her hands[.]" [*Id.*] 353. To be sure, there are a number of conclusions that the ALJ might have drawn about this conclusion–that it was expressed tentatively rather than definitively, or that Dr. Rioja did not point to a specific test result to justify her opinion. But it is not clear to the Court how the ALJ could reasonably have concluded that a treating neurologist's opinion that plaintiff may have lost fine motor control of her hands was, on its face, a "normal finding[ ]" respecting her ability to finger or manipulate, or that this opinion did not mark a significant change from Dr. Rioja's 2013 treatment notes, which contained no such opinion.

Finally, the ALJ downplayed one component of Dr. Rioja's treatment notes from her April 2013 examination of plaintiff. Based on his review of this record, the ALJ found that plaintiff had "only mild weakness in the upper and lower extremities, which contradicts greater limitations[.]" [9-1] 21. The ALJ further remarked that "the record does not specify the degree of severity for these findings[.]" [*Id.*]. In so

16

concluding, the ALJ appeared to be relying on Dr. Rioja's findings that plaintiff's strength was either 3/5 or 4/5 in her bilateral FDI and APB. *See* [*id.*] 302. But Dr. Rioja also opined in the same treatment note that EMG testing revealed "significant axonal injury" in plaintiff's right upper extremity [*id.*] 312, and the doctor's characterization of this injury as "significant" calls into question the ALJ's conclusion that there was no way to determine how severe plaintiff's deficits in the right upper extremity were.

Responding to plaintiff's argument that the ALJ repeatedly mischaracterized the evidence supporting her claim, the Acting Commissioner takes the remarkable–and thoroughly incorrect–position that "it is irrelevant how the ALJ might have characterized any one of these reports, so long as he adequately evaluated the work-related limitations resulting from plaintiff's impairments." [20] 9. But if the ALJ repeatedly mischaracterizes or minimizes the medical evidence on which a plaintiff's claim depends, how can he properly identify what work-related limitations stem from her impairments? The Acting Commissioner's brief does not answer this question, and unsurprisingly the Acting Commissioner cites no authority to support her argument. *Cf. Cleotilde D. v. Saul*, No. 18 C 7224, 2021 WL 428823, at *8 (N.D. Ill. Feb. 8, 2021) ("[T]he ALJ mischaracterized Dr. Moskovic's opinion and presented it as more limited than it was . . . This is an error requiring remand."); *Lawson*, 2020 WL 2836775, at *4 ("The ALJ's mischaracterization of the medical evidence requires remand."); *Heather M.P. v. Comm'r of Soc. Sec.*, Case No. 3:19-CV-701-RLM-MGG,

17

2020 WL 6528412, at *5 (N.D. Ind. Sept. 25, 2020) ("The ALJ's mischaracterization of Ms. P's work history and educational history requires remand.").

The Acting Commissioner also argues that the ALJ's decision should be upheld because the ALJ reasonably gave great weight to the opinions of Dr. Jhaveri and Dr. Gotanco, who reviewed plaintiff's medical records and likewise opined that she had no manipulative limitations. [20] 10. The Court rejects this argument for three reasons.

First, although both state agency reviewers recognized that Dr. Rioja had opined in February 2014 that plaintiff had lost fine motor control of her hands, [9-1] 88, 99, it is not clear how–or whether–the doctors reconciled this opinion with their determination that plaintiff's RFC should include no manipulative limitations. Their reports simply document the opinion but contain no further discussion of it. Second, there is no indication in either Dr. Jhaveri's or Dr. Gotanco's report that they reviewed the results of plaintiff's March 5, 2014 upper-extremity EMG. *See* [*id.*] 88 (list of four medical records reviewed by Dr. Jhaveri); [*id.*] 99 (list of five medical records reviewed by Dr. Gotanco). As discussed above, this EMG test was notable for establishing the existence of significant muscle loss and denervation in plaintiff's right median nerve, and for documenting Dr. Sicotte's opinion that "there is evidence of progression" compared to plaintiff's April 2013 EMG test results. [*Id.*] 314. Given that the ALJ failed to discuss Dr. Rioja's February 28, 2014 opinion and minimized the significance of the March 2014 EMG testing, the ALJ's reliance on two consulting reviewers who similarly failed to reconcile their RFC determination with this

evidence that on its face appears to support plaintiff's claim does not constitute substantial evidence for the ALJ's decision. Third, the agency doctors conducted their reviews in February and July 2016, before Dr. Parker examined plaintiff in August 2016 and found that plaintiff had "lost her grip strength in both hands but much worse on the R with hypothenar muscle atrophy." [*Id.*] 471; *see Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018) ("An ALJ should not rely on an outdated assessment if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion.").

Finally, the Acting Commissioner argues that Dr. Patel's consultative examinations of plaintiff provide substantial evidence for the ALJ's ruling that plaintiff had no manipulative limitations. [20] 6-7. Notwithstanding that Dr. Patel's strength and dexterity findings on the two examinations are consistent the ALJ's decision, the Court concludes that remand is required given the ALJ's failure to discuss Dr. Rioja's February 28, 2014 opinion and Dr. Parker's August 24, 2016 opinion as well as the ALJ's mischaracterization or minimization of medical records that appear to contradict his finding that plaintiff had no manipulative limitations.

### C. Substantial Evidence Does Not Support The ALJ's Alternative Ruling That Plaintiff Would Not Be Disabled Even If She Were Limited To Frequent Handling And Fingering.

Although the ALJ ruled that plaintiff had no work-related manipulative limitations, he also found that "even if the claimant were limited to frequent handling and fingering, the vocational expert testified that these limitations would not preclude the claimant's past work or most of the jobs discussed below at steps four

and five of the sequential evaluation." [9-1] 21. The Court concludes that this alternative ruling lacks a substantial basis in the evidence.

At the hearing, the ALJ asked the vocational expert (VE) whether a hypothetical claimant with plaintiff's RFC–which included no manipulative limitations–could perform plaintiff's past relevant work as a customer service representative. [9-1] 75. The VE testified that such a claimant could perform plaintiff's past relevant work and as a document preparer, charge account clerk, and ticket counter. [*Id.*]. 75-76. When the ALJ asked the VE to consider a hypothetical claimant with plaintiff's RFC plus a limitation to "frequent handling and fingering with the right dominant upper extremity," the VE responded that such a claimant could perform plaintiff's past relevant work and the document-preparer and charge-account-clerk positions, but not the ticket-counter position. [*Id.*] 76-77. Finally, when the ALJ asked the VE to consider a hypothetical claimant with plaintiff's RFC except that "the handling and fingering is now going to be occasional with the right dominant upper extremity," the VE testified that such a claimant could not perform plaintiff's past relevant work, and that such a limitation "would eliminate all sedentary unskilled work." [*Id.*] 78.

In making his alternative ruling, the ALJ did not set forth a principled basis, grounded in substantial evidence, for finding that plaintiff was capable of frequent handling, as opposed to being capable of only occasional handling.[3] Indeed, as the

---

[3] Under Social Security Ruling 83-10, "frequent" means "occurring from one-third to two-thirds of the time." SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983). "Occasionally," in turn, means "occurring from very little up to one-third of the time."

Court has expressed in this Memorandum Opinion and Order, the ALJ ignored evidence from plaintiff's treaters that identified serious limitations in her fine motor control abilities, as well as her grip strength, and the ALJ characterized as normal or only mildly abnormal, *see* [9-1] 25, findings in the medical record that plaintiff had significant injuries and muscle loss in her right hand and that plaintiff's condition was progressing. In these circumstances, the Court cannot find that the ALJ made a reasoned decision that the evidence he ignored or discounted might support frequent limitations but not occasional limitations. Whether plaintiff's RFC should include a limitation to frequent or occasional handling and fingering, or no manipulative limitations at all, is an issue for the ALJ to consider in the first instance based on a full and fair review of all the evidence.

*   *   *

In sum, the ALJ's decision must be reversed because (1) the ALJ failed to discuss important opinion evidence from two of plaintiff's doctors stating that plaintiff had lost fine motor control of, and her grip strength, in her hands; (2) the ALJ minimized the significance of medical evidence that was inconsistent with his ruling that plaintiff had no manipulative limitations; and (3) for purposes of his alternative ruling that plaintiff would not be disabled even if she were limited to frequent handling and fingering, the ALJ did not provide a substantial evidentiary basis for concluding that plaintiff was capable of frequent, as opposed to occasional, handling and fingering.

## Conclusion

Plaintiff's motion for summary judgment [113] is granted, and the Commissioner's motion for summary judgment [19] is denied. The decision of the SSA is reversed, and, in accordance with the fourth sentence of 42 U.S.C. § 405(g), this case is remanded for further proceedings consistent with this Memorandum Opinion and Order.[4]

**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: December 21, 2021**

---

[4] Plaintiff requests that, on remand, an independent medical expert be appointed to opine on plaintiff's manipulative limitations. [22] 10. However, it will be for the ALJ to decide whether to appoint an independent expert in this case. *See Johnson v. Comm'r of Soc. Sec.*, Cause No. 1:15-cv-310-SLC, 2017 WL 461560, at *9 (N.D. Ind. Feb. 2, 2017) ("The applicable regulations and Seventh Circuit case law clearly leave it to the discretion of the ALJ to consult a medical expert when the evidence received is inadequate for the ALJ to determine whether the claimant is disabled.").